Coker v. DaimlerChrysler Corp., 2004 NCBC 1

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF ROWAN | 01 CVS 1264 |

James and Charlotte Coker,  )
Robert and Rebecca Darconte,  )
and Donald and Bonita Shoe,  )
                             )
                Plaintiffs,  )          ORDER AND OPINION
                             )
        v.                   )
                             )
DaimlerChrysler Corporation, )
                             )
                Defendant.   )

{1}     This case arises out of plaintiffs' claim of an alleged design defect in the brake systems in minivans manufactured by DaimlerChrysler Corporation ("Daimler") and sold to consumers since 1995. Plaintiff class representatives brought this action against defendant on their own behalf and the behalf of similarly situated class members based on several claims. A class has not yet been certified. Plaintiffs allege that defendant committed both common law and statutory fraud by advertising its minivans as the safest on the market when they did not have a brake shift interlock system. Plaintiffs assert that the same conduct violated the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"). Plaintiffs seek to recover monetary damages for an alleged design defect that has yet to cause an injury to plaintiffs. They also pray for an injunction that would require recall of all the allegedly defective vehicles sold in the North Carolina market. This matter is before the Court on motion by defendant for judgment on the pleadings. For the reasons set forth below, the motion is granted.

*Wallace & Graham, P.A. by Christopher Mauriello for Plaintiffs.*

*Smith Moore, L.L.P. by David M. Moore, II; Hogan & Hartson, L.L.P. by Terri S. Reiskin for Defendant DaimlerChrysler.*

FACTUAL BACKGROUND

I.

{2}     Defendant Daimler is a Delaware corporation doing business in North Carolina. Daimler manufactures, assembles and sells automobiles, including minivans, under the brand names of Chrysler,

Dodge and Plymouth. Defendant places automobiles into the stream of commerce through authorized automobile dealers that sell Daimler products nationwide, including the North Carolina market.

{3} Class representatives owned different models of late nineties minivans manufactured and marketed by defendant. Plaintiffs allege that defendant deceived the class regarding the safety of the minivans because the vehicles did not include a brake-shift interlock system (the " interlock system"). The interlock system prevents a person from unintentionally switching an automobile with an automatic transmission from park into reverse or drive. A driver cannot place vehicles that have an interlock system into drive or reverse unless the driver depresses the brake pedal. Plaintiffs allege that defendant deceived the buyers and lessees of these minivans by advertising and marketing these vehicles as safe when the design of the automobile failed to include an interlock system.

{4} Plaintiff alleges that safety advisors within Daimler recommended to executives that defendant include the interlock system in minivans. Daimler executives allegedly ignored this recommendation even after discovering that competitors included the interlock system in their minivan models. The alleged class would include all North Carolina residents who currently own or lease a Chrysler Town and Country, Dodge Caravan, Dodge Grand Caravan, Plymouth Voyager and Plymouth Grand Voyager. The alleged class would include only those consumers who bought or leased a new minivan after April 1, 1995.

{5} The allegation against defendant is that Daimler's omission of the interlock system combined with the company's claim that the vehicles were safe constituted both fraud and a deceptive trade practice. Plaintiffs, however, do not bring such tort claims as negligence claims and do not claim that the lack of an interlock system caused physical injury. Plaintiffs furthermore do not claim to have suffered a financial injury arising from selling or repairing the minivans, nor do they assert breach of warranty claims. Plaintiffs seek the cost of installing the interlock system in their vehicles to compensate the consumer for the alleged diminished value of the vehicle resulting from the failure to include the interlock system.

MOTION FOR JUDGMENT ON THE PLEADINGS

II.

{6} "A motion for judgment on the pleadings should be granted when all material questions of fact are resolved in the pleadings and only issues of law remain." *Lambert v. Cartwright*, 584 S.E.2d 341, 344, 2003 N.C. App. LEXIS 1674 (N.C. Ct. App. August 19, 2003); *see also* N.C. R. Civ. P. 12(c). A moving party must demonstrate that no material issue of fact exists upon the closing of the pleadings to entitle the movant to judgment. *Garrett v. Winfree*, 120 N.C. App. 689, 691 463 S.E.2d 411, 413 (1995). In a Rule 12(c) motion, the Court must liberally construe pleadings in the light most favorable to the nonmoving party. *Mabrey v. Smith,* 144 N.C. App. 119,125 548 S.E.2d 183, 187 (2001), *rev. denied*, 354 N.C. 219,

554 S.E.2d 340 (2001) (citing *Pipkin v. Lassiter*, 37 N.C. App. 36, 245 S.E.2d 105 (1978)).

## STANDING AND INJURY IN FACT

## III.

{7} Plaintiffs seek monetary damages for an alleged design defect that has not yet caused any injury to plaintiffs and an injunction that requires a recall of the vehicles sold in the North Carolina market. Standing is a prerequisite for a court to have subject matter jurisdiction over a claim. *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002). A plaintiff, moreover, must have a legally cognizable injury or injury in fact in order to have the requisite standing to sue. *Green v. Valdese*, 306 N.C. 79, 88, 291 S.E.2d 630, 636 (1982) ; *see also Neuse River,* 155 N.C. App. at 114, 574 S.E.2d at 51 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

{8} An injury in fact is an injury "that is concrete and particularized, and actual or imminent." *Lee Ray Bergman Real Estate Rentals v. N.C. Fair Hous. Ctr.* , 153 N.C. App. 176, 179, 568 S.E.2d 883, 886 (2002)(*citing Transcontinental Gas Pipe Line Corp. v. Calco Enter.* , 132 N.C. App. 237, 246, 511 S.E.2d 671, 678 )(1999)(Wynn, J. concurring)). *Rivera v. Wyeth-Ayerst Labs.* , 283 F.3d 315 (5th Cir. 2002) illustrates the actual or imminent injury required to achieve standing in a class action. In *Rivera*, a panel of Fifth Circuit judges dismissed a class action for lack of standing because the plaintiffs sought relief but suffered no adverse physical or emotional effects from using the pharmaceutical in question. *Id.* at 317. Although several other patients experienced liver failure from using the drug, the class in *Rivera* did not include a plaintiff that suffered physical or emotional injury because of the pharmaceutical. *Id.* The plaintiffs sought a refund of the purchase price after the defendant recalled the drug because of the reported liver failure.

{9} The Fifth Circuit reasoned that the injury to the patients that suffered liver failure was not transitive to the plaintiffs that did not plead any physical or emotional injury. *Id.* at 320. The Fifth Circuit, moreover, stated that the injury has to be personal to the plaintiffs. *Id.* (*citing Bertulli v. Indep. Ass'n. of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001). The class did not have a tort claim because no plaintiff suffered liver failure or any other injury. Furthermore, the class did not have a contract claim, as the drug was effective and the plaintiffs received the benefit of the bargain. The court found that the class members did not experience an injury in fact and thus did not have standing. *Rivera,* 283 F.3d at 321.

{10} The instant case exhibits the same factual scenario as in *Rivera*. In the instant case plaintiffs offer no allegations that class members suffered physical or economic injury because Daimler did not include an

interlock system in the minivans.  No breach of warranty claim is asserted.  Plaintiffs only assert that the lack of an interlock system made operating or riding in the minivan less safe than if a system were in place.  Similar to the *Rivera* plaintiffs, plaintiffs did not experience any physical or emotional injury from using their cars.  The *Rivera* plaintiffs claimed that the liver failure of several patients outside the class and the subsequent recall of the drug constituted a heightened risk and hence an injury to the class.  Plaintiffs, as in *Rivera*, do not allege that the product in question caused an injury but assert that the heightened risk due to the lack of an interlock system resulted in a loss of value in the minivans.  Plaintiffs, therefore, suffered no actual or imminent injury to constitute an injury in fact; without an injury in fact, plaintiffs do not have standing to bring a claim against defendant.[1]

{11}      This opinion does not address the validity of any future claims for personal injury or property damage, as those issues are not before the Court.[2]

ECONOMIC LOSS RULE

IV.

{12}      North Carolina bars recovery for economic loss in tort and adjudicates such claims under contract law.  *Moore v. Coachmen Indus. Inc.*, 129 N.C. App. 389, 401-402, 499 S.E.2d 772, 780 (1989); *see also Ports Authority v. Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978).  The "economic loss" rule prohibits the purchaser of a defective product from using tort law to recover economic losses.  *Moore*, 129 N.C. App. at 401, 499 S.E.2d at 780.  The economic loss rule applies unless the plaintiff asserts that the defective product caused physical injury or property damage.  *See Reece v. Homette Corp.*, 110 N.C. App. 462, 466-67, 429 S.E.2d 770 (1993).  A federal appeals court in *Werwisnki v. Ford Motor Co.*, 286 F.3d 661, 679 (3d Cir. 2002), explained the policy reasons behind prohibiting the recovery of economic losses for common law fraud:

> The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between tort and contract law.  Carving out an exception for intentional fraud would eliminate that check on liability that blurs the boundaries between the two areas of law, thus exposing manufacturers to substantial liability.

{13}      In the instant case, plaintiffs seek to recover for an economic loss under the tort theory of common law fraud.  Plaintiffs claim that they suffered an economic loss because the minivans have a lower value without the interlock system.  The loss that plaintiffs seek to recoup is not from repair cost or diminished sales proceeds but from a theoretical difference in the value of the vehicle.  Plaintiffs seek from defendant an amount equal to the cost of installing an interlock system to account for the diminished value of minivans without interlock systems.  The diminished value of property constitutes an economic loss.  *See*

BLACK'S LAW DICTIONARY 513 (6th ed. 1990).  Under North Carolina law, a party cannot recover an economic loss in tort.  *See Moore*, 129 N.C. App. at 401, 499 S.E.2d at 780.  Furthermore, awarding the damages sought by plaintiff would violate the policy foundation of the economic loss rule by eviscerating the contract/warranty system now in place.  Therefore, the common law fraud claim that sounds in tort is barred, as plaintiffs seek to recover an economic loss for the diminished value of the minivans.[3]

V.

PREEMPTION

{14}     Plaintiffs seek injunctive relief under the NC UDTPA in the form of a recall of the minivans sold in North Carolina.  Courts are not to carelessly infer the preemption of state law by federal law. *International Paper Co. v. Ouelletter*, 479 U.S. 481, 491 (1987).  A court, however, may presume preemption when federal legislation comprehensively regulates a field and a reasonable inference exists "that Congress 'left no room' for supplementary regulation."  *Id*. at 491 (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

{15}     The National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 49 U.S.C. § 30101 *et seq.*, sets forth a regulatory framework for the federal government to address the recall of automobiles for safety concerns.  Subsequent amendments to the Safety Act provided that the National Highway Traffic Safety Administration ("NHSTA") is the administrative agency to order recalls and notify consumers of safety problems in motor vehicles.  Pub. L. No. 93-492, 88 Stat. 1470.  To help provide an efficient system in which different forums do not render ineffectual administrative remedies to consumers, the recalls under the Safety Act preempt recalls ordered by courts under state law.  *See In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 93, 944-45 (S.D. Ind. 2001).

{16}     The Safety Act and its accompanying regulations speak clearly to the comprehensive role that the federal government occupies in motor vehicle recalls.  Most importantly, NHTSA has sole control in "enforcing Federal motor vehicle safety standards and associated regulations, investigating possible safety-related defects, and making non-compliance and defect determinations."  49 C.F.R. § 554.1.  The statute and companion regulations promulgate a specific process in which NHTSA, on its own accord or via a petition by an interested party, conducts an investigation to determine if a motor vehicle has a safety defect.  *See* 49 U.S. § 30162; *see also* 49 C.F.R. §§ 554.6(a), 557.1-557.8.  The statute also provides a specific procedure for NHTSA to issue a recall and the remedies that it may order the manufacturers to undertake.  49 U.S. § 30119(d)(1(A), 30120 (a), 30120 (c)(1).

{17}     Other jurisdictions have issued dismissals in similar state recall actions based upon preemption.[4]

Moreover, some jurisdictions went so far as to find that a court does not have the power to order a recall of motor vehicle.[5]

{18}  The essential fact regarding preemption is that the relief sought is the prevention of future injury. The Court might have jurisdiction to provide redress if plaintiffs suffered a personal injury or property damage caused by the absence of the interlock system in the minivans manufactured by Daimler. Plaintiffs, however, seek an injunctive remedy to prevent future injury. Injunctive relief to prevent future injury from a design defect in an automobile is solely within the purview of NHTSA. An order from this Court would frustrate the Congressional intent evidenced in the Safety Act to preempt state law regarding the recall of automobiles. Given that the case at hand arises from concerns over the recall of motor vehicles and that no resultant injury has yet occurred to plaintiffs, federal law clearly preempts an injunction ordered by this Court.

## VI.

## PRIMARY JURISDICTION

{19}  Preemption is not the only legal doctrine that prevents this Court from providing injunctive relief to plaintiffs. The doctrine of primary jurisdiction addresses jurisdictional conflicts between the judiciary and an administrative agency. Primary jurisdiction is "a doctrine specifically applicable to claims cognizable in court that contain some special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). The application of the primary jurisdiction doctrine requires that plaintiffs petition NHTSA for injunctive relief and that the Court stay this action. To date, plaintiffs have elected not to file a petition with NHTSA.

{20}  The doctrine of primary jurisdiction addresses the ability of a court to exercise jurisdiction before an administrative agency renders a decision regarding some element or issue in the controversy. *North Carolina Chiropractic Assoc. v. Aetna Cas. & Sur. Co.*, 89 N.C. App. 1, 8, 365 S.E.2d 312, 316 (1988). North Carolina courts tend to defer to the agency and apply the doctrine in cases that involve a matter that falls within an agency's expertise.[6]  *See, e.g., Johnson v. First Union Corp.*, 128 N.C. App. 450, 460-61, 496 S.E.2d 1, 7-8 (1998); *North Carolina Chiropractic*, 89 N.C. App. at 8-10, 365 S.E.2d at 316-17.

{21}  In the Safety Act, Congress vested NHTSA with jurisdiction over claims involving design defects in automobiles and the potential consequential injuries. Moreover, expertise on interlock systems and design defects in minivans is more likely found in NHTSA than in this Court. The Safety Act and its subsequent amendments provide a process that empowers NHTSA to both investigate and remedy design defects in automobiles. On the other hand, the Court does not have the resources to scientifically

determine the danger that the absence of an interlock system poses to consumers, nor does the Court have in place a system to order a nationwide recall to retrofit the vehicle as efficiently as NHTSA.

{22}    Primary jurisdiction clearly belongs to NHTSA.  If a design defect does in fact exist, the agency has the resources to investigate the claim and order a recall to retrofit the minivans.  The Court must refrain from entering injunctive relief, as the forum to prevent future injuries from design defects in automobiles is the administrative agency of NHTSA.  If called upon to do so, the Court would stay the case pending the determination of NHTSA on a proper petition addressing the alleged defect.

VII.

CONCLUSION

{23}    In essence the complaint seeks to circumvent the contract warranty framework and the federal safety recall system that govern the sale of automobiles.  It seeks monetary damages for economic loss under a tort theory and a recovery for heightened risk where no actual personal injury or property damage is asserted on behalf of plaintiff or the class.  The theories upon plaintiff proceeds are new and novel under North Carolina law and have been rejected in other jurisdictions.  They would result in the courts of North Carolina substituting their judgment for that of the federal agencies with the expertise to determine automobile safety issues and eviscerate the contract warranty framework that currently governs the sale of automobiles in North Carolina.

It is, therefore, ORDERED, ADJUDGED and DECREED that plaintiffs' amended complaint be dismissed.

This 5th day of January 2004.

---

[1] Defendant cites numerous examples of cases in other jurisdictions against Daimler involving minivans and interlock systems that courts dismissed for lack of a cognizable injury. *See Ziegelman v. DaimlerChrysler Corp.,* 649 N.W.2d 556 (N.D. 2002); *Oltmans v. DaimlerChrysler Corp.,* CV-2001-03236 (Dist. Ct. Bernalillo County, N.M., July 24, 2003); *Marsh v. DaimlerChrylser Corp.*, Docket No. MON-L-892-01, slip op. at 13 (Super. Ct., Monmouth County, N.J., May 6, 2003);*Short v. DaimlerChrysler Corp.,* No. A435223 (Dist. Ct., Clark County, Nev., Mar. 20, 2003);*Bowers v. DaimlerChrysler Corp.,* Case No. 01 CV 877, slip op. at 1 (Dist. Ct., Larimer County, Colo., Dec. 23, 2002); *Cox v. DaimlerChrysler Corp.,* No. LACV080519, slip op. at 4 (Dist. Ct., Pottawattamie County, Iowa, June 2, 2002); *Ingram v. DaimlerChrysler Corp.,* Case No. 01-3684, slip op. at 23, 25 (Cir. Ct., Hillsborough County, Fla., May 7, 2002).

[2] Plaintiffs cited to the court cases in which there had been recoveries against Daimler for personal injuries based upon negligence claims.

[3]   The unfair trade practice claim is based upon the same theories of liability and damages as the common law fraud claim. To permit recovery for this claim under the NC UPPTA would also eviscerate the contract/warranty system and the economic loss rule.

[4] *See In re Bridgestone/Firestone*, 153 F. Supp. 2d at 944-45;*Namovicz v. Cooper Tire & Rubber Co.,* 225 F. Supp. 2d 582, 584-85 (D. Md. 2001); *Lilly v. Ford Motor Co.,* No. 00-C-7372, 2002 WL 84603, at *4-*5 (N.D. Ill. Jan. 22, 2002).

[5] *See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*  174 F.R.D. 332, 353 (D.N.J. 1997); *American Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr. 2d 526, 531-32 (Cal. Ct. App. 1995); *Ford Motor Co. v. Magill,* 698 So. 2d 1244, 1245 (Fla.

Dist. Ct. App. 1997).

[6] Defendant provides an example of a case in Pennsylvania in which that court granted a partial dismissal of a similar claim for lack of standing or primary jurisdiction.  See *Solarz v. DaimlerChrysler Corp.,* 2002 WL 452218, at *2 (C.C.P. Phila. Mar. 13, 2002).