Club Car, Inc. v. Dow Chemical Co., 2007 NCBC 10

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
06 CVS 15530

CLUB CAR, INC.,

        Plaintiff,

   v.

THE DOW CHEMICAL COMPANY,

        Defendant.

**ORDER**

*Helms, Mulliss & Wicker, P.L.L.C. by Richard H. Conner, III and Douglas W. Ey, Jr. for Plaintiff Club Car, Inc.*

*Mayer, Brown, Rowe & Mawe, L.L.P. by Eric H. Cottrell and Mary K. Mandeville for Defendant The Dow Chemical Company.*

Diaz, Judge.

{1} The Court heard this matter on 1 March 2007 on the Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Motion"). Defendant seeks dismissal of the Plaintiff's Second and Third Claims for Relief, alleging negligent misrepresentation and a violation of the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), respectively. After considering the Complaint, the parties' briefs, and the arguments of counsel, the Court **DENIES** the Motion.

**I.**

**PROCEDURAL BACKGROUND**

{2} Plaintiff Club Car, Inc. ("Club Car") filed its Complaint on 8 August 2006.

{3}     Defendant The Dow Chemical Company ("Dow Chemical") filed the Motion on 27 November 2006.

{4}     The case was transferred to the North Carolina Business Court and assigned to me as a complex business case by order of the Chief Justice of the North Carolina Supreme Court dated 12 December 2006.

{5}     On 27 December 2006, Dow Chemical filed a brief in support of the Motion.

{6}     Club Car filed a brief in opposition to the Motion on 19 January 2007, and Dow Chemical filed a reply brief on 1 February 2007.

{7}     On 1 March 2007, the Court heard oral arguments on the Motion.

## II.

## THE FACTS

{8}     The following facts are taken from Club Car's Complaint, which the Court accepts as true for purposes of the Motion.

{9}     Club Car is a Delaware corporation with its headquarters located in Augusta, Georgia. (Compl. ¶ 2.)  Club Car manufactures and sells golf cars.  (Compl. ¶ 1.)

{10}    Dow Chemical is a Delaware corporation with its headquarters located in Midland, Michigan.  (Compl. ¶ 2.)  Dow Chemical is a manufacturer and supplier of plastics and other chemical products.  (Compl. ¶ 2.)

{11}    The claims in this case arise from Club Car's 2003 introduction of a line of premium golf cars known as the "Precedent" line.  (Compl. ¶ 3.)  The Precedent line includes a distinctive, uniform dark gray underbody fashioned from compression-molded plastic through a process developed in Germany.  (Compl. ¶¶ 5, 8.)  The underbody is designed so as not to require

2

painting, and its molded components are intended to resist long-term exposure to the elements without fading or becoming discolored.  (Compl. ¶¶ 5-6.)

{12}   Club Car selected non-party Meridian Automotive Systems-Composite Operations, Inc. ("Meridian") to manufacture the compression molding for the rear underbody and other molded parts of its Precedent line.  (Compl. ¶ 10.)

{13}   The principal materials used to make the compression-molded parts formulation are glass fibers, polypropylene resin, and the "masterbatch," which consists of numerous additives that produce the performance characteristics of the molded parts (collectively, the "raw materials").  (Compl. ¶ 11.)

{14}   Club Car initially relied on a number of suppliers, including Dow Chemical, to provide the raw materials to Meridian.  (Compl. ¶ 12.)

{15}   Sometime in early 2003, however, Club Car accepted Dow Chemical's proposal to serve as Meridian's exclusive supplier of the raw materials.  (Compl. ¶ 13.)  According to Club Car, it did so based on Dow Chemical's assurance that the raw materials would meet Club Car's performance specifications for the production of the compression-molded parts, including satisfactory compliance with a test that measures a molded part's resistance to prolonged sunlight (the "Test").  (Compl. ¶¶ 16-17.)

{16}   In or around August 2003, Dow Chemical represented to Club Car that it had developed a formulation of the raw materials that met Club Car's specifications.  (Compl. ¶ 18.)  Dow Chemical supplied the raw materials to Meridian, who used them to produce the molded parts for the Precedent line.  (Compl. ¶¶ 19-20.)  Thereafter, Club Car incorporated the molded parts into the Precedent line before introducing them to the market.  (Compl. ¶ 20.)

{17}   In or around June 2004, Club Car discovered that, over time, portions of the dark gray underbodies of the Precedent line golf cars tended to fade to a chalky white color, contrary to the intended design.  (Compl. ¶ 21.)

{18}   Following an investigation, Club Car concluded that:  (1) the presence of zinc oxide in the resin supplied by Dow Chemical was the cause of discoloration; (2) Dow Chemical had not performed the Test properly; and (3) without notifying Club Car, Dow Chemical had altered the product formulation for the raw materials such that they failed to meet the required specifications.  (Compl. ¶ 23.)

{19}   Although Dow Chemical initially cooperated with Club Car's investigation, it denied that the raw materials contained zinc oxide.  (Compl. ¶ 24.)  Club Car also alleges that Dow Chemical failed to promptly provide it with all of the Test results that Dow Chemical had in its possession, thereby delaying and hindering the investigation into the cause of the weathering problem.  (Compl. ¶ 24.)

{20}   Club Car's Complaint asserts three claims for relief:  (1) breach of express warranties, (2) negligent misrepresentation, and (3) violation of the UDTPA.  (Compl. ¶¶ 30-47.)

{21}   Club Car seeks damages for the costs of repairing over 36,000 allegedly defective Precedent line golf cars, including expenses for:  (1) engineering, consulting, and investigation of the discoloration, and (2) labor and materials to paint the parts and to rework those golf cars that had already been assembled.  (Compl. ¶ 28.)  Club Car also seeks recovery of its lost profits. (Compl. ¶¶ 27-28.)

## III.

## CONCLUSIONS OF LAW

### A.

4

**STANDARD OF REVIEW**

{22}   The essential question on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure "is whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001) (citation omitted) (emphasis in original).  On a motion to dismiss, the complaint's material factual allegations are taken as true.  *Id.* (citing *Hyde v. Abbott Labs., Inc.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996)).

{23}   When ruling on a Rule 12(b)(6) motion, the trial court should liberally construe the complaint and should not dismiss the action unless "it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Davis v. Messer*, 119 N.C. App. 44, 51, 457 S.E.2d 902, 906-07 (1995) (citations omitted).

**B.**

**ANALYSIS**

{24}   This is the second time that I have attempted to unravel the mysteries of the economic loss doctrine.  In *Hospira, Inc. v. AlphaGary, Inc.*, No. 05-CVS-6371 (N.C. Super. Ct. Feb. 16, 2006), the Court denied defendant AlphaGary, Inc.'s Rule 12(b)(6) motion to dismiss fraud and related tort-based claims arising from the sale of an allegedly defective product.

{25}   I concluded there that North Carolina recognizes the economic loss doctrine, which generally bars a tort action

> against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract.

*Hospira*, slip op. at 5 (quoting *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992)).

5

{26}    I also noted that, while the economic loss doctrine is easily stated as a general principle, the breadth of its application in North Carolina has been less than uniform.  After canvassing the relevant cases, I gleaned six guideposts regarding the scope of the doctrine in North Carolina:

> 1.      A tort action generally will not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 82, 240 S.E.2d 345, 350-51 (1978).
>
> 2.      Where the contract involves the sale of goods, the Uniform Commercial Code will, at a minimum, bar negligence claims seeking recovery for damages to the product itself, even as to remote manufacturers who are not in privity of contract. *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 401-02, 499 S.E.2d 772, 780 (1998); *Reece v. Homette Corp.*, 110 N.C. App. 462, 466, 429 S.E.2d 768, 770 (1993).
>
> 3.      That bar, however, does not extend to claims alleging negligent misrepresentation. *See Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749 (E.D.N.C. 2002), *aff'd*, 71 F. App'x 960 (4th Cir. 2003).
>
> 4.      Moreover, where a breach of contract "'smack[s] of tort because of the fraud and deceit involved,'" North Carolina law will allow a party to pursue punitive damages based on the fraudulent act. *See Zubaidi v. Earl L. Pickett Enters., Inc.*, 164 N.C. App. 107, 115, 595 S.E.2d 190, 194 (2004) (quoting *Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C. 118, 136, 225 S.E.2d 797, 808-09 (1976)).
>
> 5.      The North Carolina appellate courts have yet to extend the application of the economic loss doctrine to bar claims based on fraud. *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 405, 617 S.E.2d 306, 318 (2005) (Hudson, J., dissenting), *aff'd per curiam*, 360 N.C. 398 (2006).[1]
>
> 6.      But, North Carolina courts must remain vigilant against a party's unsupported attempt to engraft tort liability on what is at bottom a breach of contract action. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998).

---

[1] In *Coker v. DaimlerChrysler Corp.*, 2004 NCBC 1 (N.C. Super. Ct. Jan. 5, 2004), Chief Business Court Judge Ben Tennille applied the economic loss doctrine to bar claims for common law fraud and unfair trade practices arising from the sale of an allegedly defective automobile, stating that to do otherwise would "eviscerat[e] the contract/warranty system [of adjudicating liability] now in place." *Coker*, 2004 NCBC 1, at ¶ 13.  The North Carolina Court of Appeals affirmed Judge Tennille's order on other grounds, however, and the North Carolina Supreme Court's *per curiam* decision did not reach the issue.

*Hospira*, slip op. at 8-9.

{27}   I declined in *Hospira* to dismiss plaintiff's fraud, negligent misrepresentation, and UDTPA claims because the complaint (1) did not allege a contract between the parties, and (2) alleged sufficient facts in aggravation to support the tort-based claims. *Hospira*, slip op. at 10-14.

{28}   At bottom, the economic loss doctrine's rationale rests on risk allocation. *AT&T Corp. v. Med. Review of N.C., Inc.*, 876 F. Supp. 91, 93 (E.D.N.C. 1995). At least in that regard, this case is different from *Hospira* because Club Car's Complaint alleges that the parties chose to allocate the risk of non-performance via a series of express warranties. (Compl. ¶¶ 30-34.)

{29}   More specifically, Club Car asserts that it selected Dow Chemical as its supplier of raw materials for the compression-molded parts and that it did so pursuant to Dow Chemical's express "affirmations of fact, promises, [and] descriptions of the product [that] formed part of the basis of the bargain." (Compl. ¶ 32.).

{30}   Club Car does not dispute that the damages it seeks in this case constitute economic loss under North Carolina law. (Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 5.) In light of that concession, and given Club Car's claim that it has a remedy for breach of express warranties, the guideposts set out in *Hospira* suggest that Club Car's second and third claims for relief fail as a matter of law. *See Atl. Coast Mech. Inc. v. Arcadis*, 175 N.C. App. 339, 343, 623 S.E.2d 334, 338 (2006) (stating that an express warranty is contractual in nature and that breach of such a warranty does not depend upon proof of negligence, but arises out of the contract); *see also Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp.*, No. 5:97-CV-683-BR(2), 1998 U.S. Dist. LEXIS 15392, at *10 (E.D.N.C. July 23, 1998) (denying Rule 12(b)(6) motion to dismiss breach of warranty claims, but dismissing claims alleging negligence and violations of the UDTPA,

stating that "when a plaintiff seeks recovery for damage to a product that is the subject of the contract between the parties, a plaintiff is limited to a contract or warranty action"); *Spillman*, 108 N.C. App. at 65, 422 S.E.2d at 741-42.

{31} The Court defers dismissal of the claims here, however, because it is unclear whether Club Car has a contractual remedy. Dow Chemical has yet to answer the allegations of the Complaint, and its brief in support of its motion to dismiss is cryptic as to the scope of the express warranties alleged by Club Car. (*See* Def.'s Brief in Supp. of Mot. to Dismiss Pl.'s Second and Third Claims for Relief 7 (stating that "whether the bargains Club Car struck in connection with the manufacture and sale of the compression molded parts provide a contractual remedy against Dow [Chemical] is a question for another day").)

{32} Absent an express allocation of risk between the parties, it remains an open question whether Club Car may pursue tort and UDTPA claims arising from Dow Chemical's alleged negligent misrepresentations regarding the performance specifications of the raw materials. *See Wilson*, 206 F. Supp. 2d 749 (holding that economic loss doctrine does not apply to bar a negligent misrepresentation claim); *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1990) (allowing claim for UDTPA violation to proceed based on negligent misrepresentations); *see also Lord v. Customized Consulting Specialty, Inc.*, No. COA06-725, 2007 N.C. App. LEXIS 782, at *1 (N.C. Ct. App. Apr. 17, 2007) (holding that "the economic loss rule does not operate to bar a negligence claim in the absence of a contract between the parties").

{33} Club Car's Complaint alleges that: (1) Dow Chemical provided false and/or deceptive information to it regarding the performance specifications of the raw materials used to manufacture component parts of a line of golf cars, (2) Dow Chemical owed it a duty of care

8

with respect to that information, (3) Club Car justifiably relied on the information to its detriment and was deceived by Dow Chemical's conduct, and (4) Dow Chemical's deceptive conduct was in and affected commerce. (Compl. ¶¶ 35-47.) Consistent with the *Wilson* and *Forbes* decisions, these allegations are sufficient to make out claims for negligent misrepresentation and a violation of the UDTPA.

{34} Moreover, that Club Car has also pleaded contractual relief for breach of express warranties is of no legal moment, at least not at this stage. Subject to the requirements of Rule 11, our rules of civil procedure allow a pleader to "state as many separate claims or defenses as he has regardless of consistency[.]" N.C.G.S. § 1A-1, Rule 8(e)(2); *see Hendrix v. Hendrix*, 67 N.C. App. 354, 357, 313 S.E.2d 25, 27 (1984) (Phillips, J., concurring) ("The main reason for permitting inconsistent claims to be alleged is so that litigants can investigate and assess them before having to decide—or before the court decides for them—which inconsistent claim is supportable and which is not.").

{35} Accordingly, the Court declines to dismiss the second and third claims for relief at this time because Club Car may be entitled to relief in tort and under the UDTPA in the absence of a contractual remedy.

## CONCLUSION

{36} The Court **DENIES** the Motion.

This the 3rd day of May, 2007.

9